■ In the Matter of ROBERT ABRAMS, as Attorney-General of the State of New York, et al., Appellants, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Respondents. — Appeal from a judgment of the Supreme Court at Special Term (Conway, J.), entered December 17, 1980 in Albany County, which, *inter alia,* dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, for injunctive relief against respondent Consolidated Edison Company of New York, Inc., and annulment of a determination of respondent Public Service Commission. On October 17, 1980, the Indian Point II nuclear generating unit, owned by Consolidated Edison Company of New York, Inc. (Con. Ed.), ceased operating allegedly as a result of Con. Ed.'s own negligence. To fill the resulting 59-day void in electrical production, Con. Ed. had to resort to more expensive fossil fuels. By means of a monthly fuel adjustment clause statement that Con. Ed. was required to file with respondent Public Service Commission (PSC), Con. Ed. sought to pass these increased

fuel costs, amounting to over $800,000 per day and representing approximately a 10% rate increase for the average utility customer, through to its ratepayers. On November 3, 1980, the Attorney-General of the State of New York and 25 of Con. Ed.'s ratepayers filed a complaint and petition with the PSC seeking to prevent Con. Ed. from passing the replacement power costs along to its consumers. It was urged that the fuel adjustment clause (FAC), a mechanism included in a utility's tariff that allows rates to reflect changes in the cost of fuel a utility has purchased with which to generate electricity, should not function automatically here because Con. Ed. was responsible for the outage. Although the PSC denied petitioners' request, it ordered an investigation into the cause of the October 17, 1980 outage and directed that all fuel adjustment charges billed to consumers, based on replacement fuel costs for Con. Ed.'s Indian Point II generating station after October 16, 1980, were subject to being refunded. After the PSC refused to grant petitioners a rehearing, petitioners initiated the instant proceeding seeking, *inter alia,* a temporary restraining order and a preliminary injunction enjoining Con. Ed. from collecting the increased charges. Special Term denied the requested injunctive relief and dismissed the petition, giving rise to this appeal. Initially, petitioners maintain that respondents unlawfully invoked the FAC. In their view, proper application of the FAC is limited to reflecting only those increases and decreases in fuel prices over which the utility has no control. Their distinction between increases due to "market forces" and other cost factors, such as changes in the generation mix, however, is unsupported by either precedent or policy concerns. Moreover, if adopted, the principle they espouse would prohibit a utility from recouping increased expenditures made while one generator was temporarily shut down for even routine repairs or maintenance if a less efficient or more expensive replacement generator was pressed into service. Utilities would have a reduced incentive to maintain or improve existing facilities, an anomalous result. Such a restrictive notion of the FAC redounds to the benefit of neither the consumers nor the utility. And if, as petitioners claim, additional fuel costs have been imprudently incurred, they are not remediless, for both the PSC's regulations (16 NYCRR 136.58) and subdivision 12 of section 66 of the Public Service Law afford the commission ample authority to deter a utility from burdening its customers with fuel cost increases stemming from imprudent management. In fact, resolution of the question of managerial imprudence is not sought here, for that very issue is currently being pursued by the Attorney-General in a separate proceeding.[*] Petitioners' remaining attack is that the magnitude of the increased rates was such that there was a "major change" in rates within the meaning of subdivision 12 of section 66 of the Public Service Law and any such change is lawfully ineffective without a hearing and appropriate notice. Subdivision 12 of section 66 requires 30 days' notification to the PSC and public notice when a proposed rate increase contemplates a revenue increment exceeding the greater of $100,000 or 2½% of the utility's gross revenues. However, increases in fuel adjustment charges are not subject to these mandatory notice and hearing provisions. In the case of *Trustees of Villages of Saugerties & Ellenville* (15 PSC 431, 433), the PSC observed: "Rate schedules consist not merely of lists of rates in dollars and cents but they customarily include provisions that will, in various ways, affect the rates charged at the time of filing or thereafter. A fuel

---

[*]  In fact, the PSC has just recently concluded that Con. Ed. incurred $33.7 million of excessive fuel adjustment clause charges between October 17, 1980 and December 14, 1980 due to lack of reasonable care in its management and operation of the Indian Point II·nuclear facility and has directed Con. Ed. to refund this amount, with interest, to its rate payers (Case 27869 — *Consolidated Edison Co. of N. Y.,* Opn No. 82-2, issued Jan. 22, 1982).

adjustment clause is nothing more or less than a fixed rule under which future rates to be charged the public are determined. It is a mathematical formula included in the filed schedules of the company under which the rates and charges fluctuate as the cost of fuel fluctuates * * *. So long as the formula is not changed, there is no requirement for the filing of a schedule of rates or a change in the filed schedule." (Citations omitted.) Insofar as the FAC is concerned, the notice and hearing requirements of subdivision 12 of section 66 are fulfilled when the utility files its rate applications with the PSC. It is at that point that the reasonableness of the fuel adjustment formula is available for public scrutiny and criticism (see *Matter of Consumer Protection Bd. of State of N. Y. v Public Serv. Comm.,* 85 AD2d 321). Judicial deference to the interpretation given a statute by the agency charged with its enforcement, unless the interpretation is irrational or unreasonable, is a policy of long standing (*Matter of Fineway Supermarkets v State Liq. Auth.,* 48 NY2d 464, 468). The need to forsake that rule here is unapparent. Furthermore, the 1974 amendment (L 1974, ch 863, § 1) to subdivision 12 of section 66 lends additional support to the PSC's interpretation, for it conferred discretionary authority on the PSC to hold public hearings "concerning the propriety of any increased rate or charge for fuel costs". If the Legislature considered fuel adjustment charges "major changes" in rates, then notice and hearings would be mandatory and an amendment endowing the PSC with this discretion would be an incongruous if not an irrational exercise of legislative power. Judgment affirmed, without costs. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Weiss, JJ., concur.